UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LARRY DAVIS,

                           Plaintiff,                    9:24-cv-00218 (BKS/MJK)

v.

KRISTEN HALL, Registered Nurse; TIMOTHY
KIJOWSKI, Correction Officer; M. SMITH, Sergeant; R.
BURKE, Correction Officer; and S. HUFF, Correction
Officer,

                           Defendants.

---

**Appearances:**

*Plaintiff Pro Se:*
Larry Davis
Elmira Correctional Facility
Elmira, New York 14902

*For Defendants:*
Letitia James
Attorney General of the State of New York
Elizabeth V. Lombardi
Assistant Attorney General
300 South State Street, Suite 300
Syracuse, New York 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Larry Davis commenced this 42 U.S.C. § 1983 action arising out of his

incarceration at Auburn Correctional Facility. (Dkt. No. 1). Plaintiff's Eighth Amendment

excessive force, failure to intervene, and deliberate indifference to medical needs claims survived

the Court's initial 28 U.S.C. § 1915(e)(2) review. (Dkt. No. 4, at 15). On June 5, 2025,

Defendants filed a motion for summary judgment. (Dkt. No. 42). The same day, the Court mailed Plaintiff a notice informing him of the nature and consequences of summary judgment as required by *Vital v. Interfaith Medical Center*, 168 F.3d 615, 620–21 (2d Cir. 1999). (Dkt. No. 43, at 2). Plaintiff filed responses on June 23 and July 28, 2025. (Dkt. Nos. 45, 48). Defendants filed a reply on August 12, 2025. (Dkt. No. 52).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c), this matter was referred to United States Magistrate Judge Mitchell J. Katz, who on November 13, 2025 issued a Report-Recommendation and Order recommending that the Court grant Defendants' motion. (Dkt. No. 58). Magistrate Judge Katz instructed Plaintiff that he had 14 days to object to the Report-Recommendation, and that failure to object would preclude appellate review. (*Id.* at 32 (citing, *inter alia*, 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 6(a), 72)). The Court subsequently extended Plaintiff's time to object until February 12, 2026. (Dkt. No. 60). Plaintiff failed to timely file objections, so the Court has reviewed the Report-Recommendation for clear error. *See Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025). Upon such review, the Report-Recommendation is rejected in part and adopted in part.

## II.    FACTS

Plaintiff entered Auburn in early 2023. (*See* Dkt. No. 42-10, at 28–29). During his incarceration there, Defendants Mark A. Smith, Robert Burke, Sean Huff, and Timothy Kijowski worked as corrections staff, and Defendant Kristen Hall (now Leader) worked as a registered nurse. (Dkt. No. 42-23, ¶ 1; Dkt. No. 42-27, ¶ 1; Dkt. No. 42-31, at 1; Dkt. No. 42-35, ¶ 1; Dkt. No. 42-39, ¶ 1). Plaintiff alleges that Burke, Huff, and Kijowski assaulted him twice—initially in a strip frisk room, and then in an observation cell—that Smith failed to stop these assaults, and that Smith and Hall were deliberately indifferent to his resulting medical needs. (*See* Dkt. No. 45, at 3–5).

The Court's initial review order and the Report-Recommendation contain detailed descriptions of the relevant events. (*See* Dkt. No. 4, at 4–6; Dkt. No. 58, at 2–7). Accordingly, the Court assumes familiarity with the facts and discusses below only those necessary to explain its decision.

## III.   DISCUSSION

The Court has reviewed the Report-Recommendation according to well-established summary judgment standards, viewing the record in the light most favorable to Plaintiff as the non-moving party.[1] *See, e.g.*, *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007). The record, however, includes video depicting some of the relevant events. So as to such evidence, the Court views "the facts in the light depicted by the videotape." *Linton v. Zorn*, 135 F.4th 19, 30 (2d Cir. 2025) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)). Additionally, because Plaintiff's pro se complaint was sworn under penalty of perjury, (*see* Dkt. No. 1, at 6), the Court has considered it "as evidence for summary judgment purposes."[2] *Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (2d Cir. 2019); *cf. Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing the special solicitude afforded pro se litigants).

---

[1] In his opposition, Plaintiff included a document titled "Notice of Motion," requesting that the Court "grant[] [his] complaint against the defendants" and citing Federal Rule of Civil Procedure 56. (Dkt. No. 48, at 25). Magistrate Judge Katz previously instructed Plaintiff how to file a proper summary judgment motion under the local rules, (*see* Dkt. No. 28), and the deadline for submitting dispositive motions expired before Plaintiff submitted his opposition, (*see* Dkt. Nos. 41, 60). Accordingly, the Court has not construed this document as a separate summary judgment motion. In any event, the Court would deny such a motion for the reasons stated in this decision and the adopted portions of the Report-Recommendation.

[2] Plaintiff signed the complaint and stated: "I declare[] under penalty of perjury that the for[e]going is true and correct." (Dkt. No. 1, at 6). Although Plaintiff omitted the date from the handwritten "dated" section he had included in the complaint's body, (*id.*), the top of the cover sheet with which he concurrently submitted the complaint was dated February 12, 2024, (Dkt. No. 1-1, at 1). In light of Plaintiff's pro se status, the Court deems this sufficient to comply with 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65–66 (2d Cir. 1999); *cf. Edwards v. Arocho*, 125 F.4th 336, 348 & n.5 (2d Cir. 2024) (liberally construing "broad[]" affirmation in pro se summary judgment declaration to "support the factual allegations contained in [pro se litigant's] entire summary judgment brief" submitted concurrently with declaration).

A.      **Excessive Force and Failure to Intervene**

The Eighth Amendment proscribes cruel and unusual punishment, including the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Such claims involve "two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). The subjective component asks "whether the defendants had a 'wanton' state of mind when they were engaging in the alleged misconduct." *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (quoting *Hudson*, 503 U.S. at 7). It "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Hudson*, 503 U.S. at 7). The objective component asks whether the conduct was "sufficiently serious," and involves a "context specific" inquiry, *Crawford*, 796 F.3d at 256 (first citing *Hudson*, 503 U.S. at 8; then quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)), in light of "contemporary standards of decency," *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). However, "contemporary standards of decency always are violated"— "whether or not significant injury is evident"—when officials "use force to cause harm maliciously and sadistically." *Wright*, 554 F.3d at 268–69 (quoting *Hudson*, 503 U.S. at 9).

Additionally, officials "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Sloley v. VanBramer*, 945 F.3d 30, 46–47 (2d Cir. 2019) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)); *see also O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (applying standard to pretrial detainee excessive force claim). In the excessive force context, the official must have "observe[d] the use of force and ha[d] sufficient time to act to prevent it." *See*

*Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill*, 839 F.2d at 11–12). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Sloley*, 945 F.3d at 47 (quoting *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014)).

Here, Plaintiff asserts two sets of excessive force and failure to intervene claims, one stemming from the events in the strip frisk room, and the other from those in the observation cell. The Court addresses each incident in turn.

### 1.    Strip Frisk Room

The Report-Recommendation concluded that, as to the strip frisk room claims, Plaintiff satisfied the objective component, but not the subjective component. (*See* Dkt. No. 58, at 15–22). As a result, his corresponding failure to intervene claims failed too. (*Id.* at 22). The Court disagrees. It first summarizes the relevant summary judgment record evidence in the light most favorable to Plaintiff, before addressing the merits.

### a.    Evidence in the Record

According to Plaintiff, the facts underlying these claims are as follows: after escorting Plaintiff into the strip frisk room, Kijowski "punched [him] on the right side of his face," and Burke and Huff "slammed [him] on the floor face first." (Dkt. No. 45, at 3; *see also* Dkt. No. 1, at 3; Dkt. No. 42-10, at 48–49). While Plaintiff remained on the floor, those three then "started punching and kicking [him] in the face, legs, ribcage and chest for about five to seven minutes." (Dkt. No. 45, at 3; Dkt. No. 1, at 3; Dkt. No. 42-10, at 51–53). Smith saw the entire incident but did not intervene. (Dkt. No. 45, at 3; Dkt. No. 1, at 3–4).

For their part, Smith, Burke, Huff, and Kijowski all aver that no such assault occurred; no one intervened, they say, because none believed any other had used excessive force. (Dkt. No. 42-23, ¶¶ 9, 12, 14; Dkt. No. 42-27, ¶¶ 8–10; Dkt. No. 42-35, ¶¶ 8, 10–11; Dkt. No. 42-39, ¶¶ 8–

9, 11). Instead, these Defendants maintain that they used "reasonable force"—primarily body holds—in response to Plaintiff's threats, aggression, and refusal to cooperate with the strip frisk. (Dkt. No. 42-23, ¶¶ 8, 10–13; Dkt. No. 42-27, ¶¶ 5–7, 9; Dkt. No. 42-35, ¶¶ 7, 9, 11; Dkt. No. 42-39, ¶¶ 6–7, 9). They assert that, during the struggle, Plaintiff spit on them, bit Kijowski's finger, and attempted to bite Huff's leg. (Dkt. No. 42-23, ¶¶ 8, 13; Dkt. No. 42-27, ¶ 7; Dkt. No. 42-35, ¶¶ 7, 9; Dkt. No. 42-39, ¶¶ 7, 9, 10).

Defendants have submitted video surveillance footage from Auburn during the relevant time.[3] (Dkt. Nos. 42-4, 42-5, 42-6, 42-7, 42-8). None of this footage, however, provides a full view of what occurred in the strip frisk room. From one angle, a small portion of the room is visible. (*See* Dkt. No. 42-6, at 00:00–05). But after Plaintiff and corrections staff arrive, staff bodies block most of that portion. (*See id.* at 02:59–03:30). Before and upon arrival, Plaintiff can be heard refusing to cooperate with staff; at times, he also raises his voice and tells officers to "take the cuffs off" so they all could fight. (*Id.* at 00:24–43, 01:00–46, 02:13–33, 03:03–40). Plaintiff's head is visible for just over 30 seconds. (*Id.* at 03:05–40). As he continues to yell, one officer moves Plaintiff away from the visible portion of the room and yells "stop" and "take him down," before a struggle ensues off camera; during the struggle, Plaintiff exclaims, "yeah hit me," while they appear—though they are not entirely visible—to bring him to the ground. (*Id.* at 03:34–04:01). After that, no one's conduct in the strip room is visible. (*Id.* at 03:40–14:20).

Audio reflects that, with Plaintiff on the ground continuing to yell, an officer directs him multiple times to "stop spitting," says "I think he just tried to bite me," and yells "ah, fucker, stop biting," to which Plaintiff replies, "I'm not biting you." (*Id.* at 03:48–04:14). Plaintiff is also

---

[3] They have also submitted footage from a handheld camera, which the Court discusses below in connection with the second set of excessive force and failure to intervene claims. (*See* Dkt. No. 42-9).

heard saying "y'all hitting me." (*Id.* at 04:13–15). After a period of quiet, Plaintiff tells officers that they "should've took the cuffs off," and that one of them "hit like a bitch." (*Id.* at 05:23–49). Plaintiff then yells to a fellow prisoner that "they just jumped on me." (*Id.* at 06:04–20). When a supervisor returns to have officers stand Plaintiff up for a force strip frisk, Plaintiff remarks, "they punched me in my fucking face." (*Id.* at 06:24–38). Plaintiff again yells that officers punched him and threatens to "fight officers" if they would uncuff him. (*Id.* at 06:49–07:56, 08:08–09:10, 9:50–10:07). Eventually, Plaintiff tells another prisoner that officers are cutting his clothes, presumably for a force strip frisk. (*Id.* at 10:26–35). Plaintiff again remarks that officers would not remove his handcuffs, and that they had punched him. (*Id.* at 10:35–42, 11:53–12:02, 12:11–14). Following this frisk, officers escort Plaintiff out of the room to the observation cell. (*See id.* at 14:13–20).

Medical records documenting the treatment Plaintiff received after the incident reflect that he complained of bruising on his face, left foot, and left ankle, though no ankle fracture or dislocation occurred. (*See* Dkt. No. 42-12, at 1, 3, 6). Additionally, in early April, Plaintiff complained of numbing in his left hand, which had been "ongoing since" the strip frisk room incident. (*Id.* at 3). When a nurse touched his hand to assess it, Plaintiff "screamed." (*Id.*). As Defendants note, Plaintiff's mental health records also reflect that he told a counselor the day after the incident that he had done "some things to staff." (Dkt. No. 42-13, at 10).

On summary judgement, the Court cannot resolve the factual dispute between Plaintiff's and Defendants' competing versions of events. While the Report-Recommendation noted inconsistencies between Plaintiff's account and other evidence, (*see* Dkt. No. 58, at 16–17, 18), they go to credibility. And "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor*

*v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). Plaintiff's testimony itself is not "so contradictory that doubt is cast upon [its] plausibility." *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, J.)); *see also Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011) (per curiam).

Additionally, some of the purported inconsistencies are arguably not inconsistent when construed in the light most favorable to Plaintiff as the nonmoving party. *See Gilles*, 511 F.3d at 243. For example, the Report-Recommendation noted Plaintiff's allegation "that Kijowski punched him in the right side of his head," even though the "left side of [his] face was bruised." (Dkt. No. 58, at 16 (emphasis omitted)). However, the citation for the latter proposition reflects only Plaintiff's admission that "*the medical provider noted* that [he] had a bruise on the left side of his face." (Dkt. No. 45, at 20 (emphasis added)). An acknowledgement of what the notes stated, (*see* Dkt. No. 42-12, at 6), is not an admission of their accuracy. Moreover, Plaintiff might have sustained an injury to the left side of his face when Burke and Huff "slammed [to] the floor," or when Kijowski, Burke, and Huff repeatedly "punch[ed] [him] in the face" after the initial punch. (*See* Dkt. No. 45, at 3). The Report-Recommendation further highlighted that, despite being subject to a lengthy "gang assault," Plaintiff escaped "with only two bruises." (Dkt. No. 58, at 17). But as described above, Plaintiff suffered arguably significant injury. And on April 3, 2023—weeks after the March 15 incident—a medical provider described some of his bruising as still "dark." (Dkt. No. 42-12, at 3).

Nor does the video surveillance footage resolve these factual disputes. *See Linton*, 135 F.4th at 30. It does not definitively support either side's account. As described above, for most of the incident, Plaintiff and the relevant Defendants were not visible to the camera. The audio

8

reflects Plaintiff's yelling and aggressive remarks, as well as some Defendants' assertions that he tried to bite them. But it also reflects Plaintiff's statements that Defendants had hit him, and that he was not biting them. The footage therefore does not provide enough contradictory evidence to deem Plaintiff's allegations that he was gratuitously beaten for several minutes while handcuffed a "visible fiction." *Scott*, 550 U.S. at 381.

### b.   Merits

Considering those allegations, there exists a genuine issue of material fact on both the objective and subjective components of Plaintiff's excessive force claim. As to the latter, the Report-Recommendation correctly identified factors the Second Circuit has instructed courts to use "to determine if prison officials used force maliciously or wantonly." *See Jordan v. Walker*, No. 22-1118, 2024 WL 4635225, at *2, 2024 U.S. App. LEXIS 27661, at *5 (2d Cir. Oct. 31, 2024) (citing *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)); (*see also* Dkt. No. 58, at 13 (citing *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003))).

Applying those factors here, Defendants needed to use some degree of force—Plaintiff refused to cooperate with the strip frisk. But again, the video does not depict the full events. So the Court cannot determine the degree of force necessary, or whether the force used was proportional to that need. *See Romano*, 998 F.2d at 105. The factual disputes here also "make[] it difficult, if not impossible, to ascertain what threat [Defendants] perceived and whether they made an effort to temper the severity of their response" inside the strip frisk room. *See Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016) (per curiam). Accepting Plaintiff's account that Defendants gratuitously beat him for several minutes while handcuffed, those factors weigh in Plaintiff's favor. Further, as the Report-Recommendation acknowledged, a prisoner "who is gratuitously beaten by guards does not lose their ability to pursue an excessive force claim

merely because they had the good fortune to escape without serious injury." (Dkt. No. 58, at 19 (alterations adopted) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam))).

Plaintiff's "allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that [Defendants] used force maliciously and sadistically." *Wright*, 554 F.3d at 269. And "when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated,'" satisfying the objective component. *Id.* at 268–69 (quoting *Hudson*, 503 U.S. at 9). To be sure, a reasonable person might expect Plaintiff's medical records to reflect additional injury. One might also reasonably discredit his testimony based on the limited video evidence—reflecting, among other things, his disobedient conduct—and Defendants' declarations telling a different story. Nevertheless, the Second Circuit "has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." *Wright*, 554 F.3d at 269; *Harris*, 818 F.3d at 65 (same). Plaintiff's Eighth Amendment claims survive summary judgment, and the Court rejects so much of the Report-Recommendation as recommended otherwise.[4]

Plaintiff's corresponding failure to intervene claims may also proceed. Because the video does not depict what happened in the strip frisk room, a genuine dispute of material fact exists as to whether, and to what extent, each Defendant "observe[d] the use of force and ha[d] sufficient time to act to prevent it." *Figueroa*, 825 F.3d at 106. That factual issue must be resolved by a jury. *See Sloley*, 945 F.3d at 47. The Court notes Defendants' argument that Burke, Huff, and Kijowski cannot be liable for both using excessive force and failing to intervene. (*See* Dkt. No.

---

[4] Although Defendants raised qualified immunity, (*see* Dkt. No. 58, at 31 (declining to reach this issue)), the factual disputes identified above also preclude the Court from granting summary judgment on that basis at this stage. *See Jones v. Baran*, 798 F. Supp. 3d 197, 216 (D. Conn. 2025) (concluding same in Eighth Amendment excessive force case involving video evidence).

42-1, at 18–19 (citing cases)). However, again in light of the factual disputes described above, the Court declines to address that issue at this time. It accordingly rejects the Report-Recommendation's conclusion as to these failure to intervene claims.

### 2.    Observation Cell

As to the alleged observation cell assault, the Report-Recommendation concluded that both the subjective and objective components were lacking; again, with no underlying constitutional violation, these failure to intervene claims failed too. (Dkt. No. 58, at 22–26). The Court agrees with Magistrate Judge Katz that these claims do not survive summary judgment.

Plaintiff avers the following as to his observation cell claims: Defendants escorted him from the strip frisk room to the cell, and "once [he] was inside," they "assaulted [Plaintiff] again for about four to five minutes," all with Smith present. (Dkt. No. 45, at 3, 5). This incident, however, was fully captured by the handheld camera video noted above. (*See* Dkt. No. 42-9). The Court adopts the Report-Recommendation's factual description of this incident, (Dkt. No. 58, at 23), which accurately reflects "the facts in the light depicted by the videotape," *Linton*, 135 F.4th at 30 (quoting *Scott*, 550 U.S. at 381).

In short, the video shows Defendants using reasonable, proportional force to regain the retention strap from Plaintiff; nowhere does it depict Defendants or anyone else beating him. So there is no genuine dispute that the force "was applied in a good-faith effort to maintain or restore discipline," not "maliciously and sadistically to cause harm." *Blyden*, 186 F.3d at 262 (quoting *Hudson*, 503 U.S. at 7). Plaintiff's excessive force and failure to intervene claims stemming from the observation cell incident fail. *See Wright*, 554 F.3d at 268–69; *Figueroa*, 825 F.3d at 106. The Court therefore adopts the Report-Recommendation as to these claims.

**B.    Deliberate Indifference**

The remainder of the Report-Recommendation addressed Plaintiff's Eighth Amendment deliberate indifference to medical needs claims. (Dkt. No. 58, at 26–31). The deliberate indifference standard, too, "includes both subjective and objective components." *Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2024) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). To satisfy the former, as Magistrate Judge Katz explained, a plaintiff "must show that the prison officials consciously disregarded a substantial risk of serious harm" to their health of safety. (*Id.* at 27 (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994))). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Clark v. Valletta*, 157 F.4th 201, 209 (2d Cir. 2025) (quoting *Farmer*, 511 U.S. at 837).

Here, no reasonable juror could conclude based on the record evidence that either Smith or Hall drew the required inference. *See id.* Accordingly, on that basis, the Court adopts the Report-Recommendation's conclusion that these claims also do not survive summary judgment. (*See* Dkt. No. 58, at 28).

**IV.    CONCLUSION**

For these reasons, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 58) is **REJECTED in part** and **ADOPTED in part** as set forth above; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 42) is **DENIED** as to Plaintiff's excessive force and failure to intervene claims stemming from the strip frisk room incident and **GRANTED** in all other respects; and it is further

**ORDERED** that each of Plaintiff's claims, except for the excessive force and failure to intervene claims identified above, are **DISMISSED with prejudice**; and it is further

**ORDERED** that the Clerk is respectfully directed to terminate Kristen Hall as a Defendant in this action and serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>March 12, 2026</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge